```
 1                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
 2                         GREENBELT DIVISION


 3    _____
                                         )
 4    UNITED STATES OF AMERICA,          )
                                         )
 5         Plaintiff,                    )
                                         )Docket Number
 6              vs.                      )22-cr-00231-PJM-1
                                         )
 7    ARCHIE ARNOLD PAUL,                )
                                         )
 8         Defendant.                    )
      _____)
 9              TRANSCRIPT OF SENTENCING HEARING
10         BEFORE THE HONORABLE PETER J. MESSITTE
             UNITED STATES DISTRICT COURT JUDGE
11         Tuesday, November 7th, 2023, AT 11:17 A.M.


12

13    APPEARANCES:

14    On Behalf of the Plaintiff:

15         G. MICHAEL MORGAN, JR., ESQUIRE
           BIJON MOSTOUFI, ESQUIRE
16         United State's Attorney's Office
           6406 Ivy Lane, Suite 80
17         Greenbelt, MD  20770
           (301)344-8135
18
      On Behalf of the Defendant:
19
           SEAN McKEE, ESQUIRE
20         Office of the Federal Public Defender
           District of Maryland
21         6411 Ivy Lane, Suite 710
           Greenbelt, MD  20770
22         (301)344-0600

23       ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPED NOTES***

24                      PAULA J. LEEPER
                 Federal Official Court Reporter
25         United States District Court, Greenbelt, Maryland
```

```
 1                        I N D E X

 2  TESTIMONY OF CHRISTINE HAYFRON-BENJAMIN

 3  Examination by The Court                         7
    Cross-Examination by Mr. Morgan                 12
 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2                          P R O C E E D I N G S

3    (Court called to order.)

4              THE COURT:  Ladies and gentlemen, be seated, please.

5              MR. MORGAN:  Good morning, Your Honor.

6              THE COURT:  Call the case.

7              DEPUTY CLERK:  The matter now pending before the

8    Court is Criminal Action Number PJM-22-0231-1, the United

9    States of America versus Archie Arnold Paul.  The matter now

10   comes before the Court for sentencing.

11             THE COURT:  All right.  Counsel, identify yourselves

12   for the government and then defendant.

13             MR. MORGAN:  Good morning, Your Honor.  Michael

14   Morgan and Bijon Mostoufi on behalf of the United States.

15   We're joined at counsel table by Special Agent Britany Nash

16   from the United States Secret Service.  Good morning.

17             THE COURT:  Defendant?

18             MR. MCKEE:  And good morning, Your Honor.  Sean McKee

19   representing Mr. Paul, who is present to my right.

20             THE COURT:  Mr. Morgan, we have an issue on the plea

21   agreement?

22             MR. MORGAN:  Yes, Your Honor.  It's come to our

23   attention that there is a report filed -- or provided by

24   Ms. Christine Hayfron-Benjamin that's dated November 2nd, 2023,

25   that's -- the subject of which is the release status report,

1    slash, notice of apparent violation.

2        In that, it mentions, in the apparent violation section,

3    on the second page:  "When discussing Mr. Paul's treatment and

4    the stopping of the treatment, the writer indicated that

5    Mr. Paul added that this case is not a drug case and he does

6    not have a drug problem.  He stated that he only claimed drug

7    use in hopes that it would result in a more lenient sentence.

8    However, recent court decisions that were not in his favor

9    taught him that the Court didn't care; and so, therefore, he

10   did not see the point of continuing the charade."

11       And so that is certainly of concern to the government.  If

12   he is not being truthful with regards to his drug use, or lack

13   thereof, his need for treatment, or lack thereof, in order to

14   convey to the Court what he wants to convey to the Court in

15   order to get a more lenient sentence.  So that is of concern,

16   great concern to the government.

17          **THE COURT:**  What are you proposing to do?

18         **MR. MORGAN:**  Your Honor, I believe that depending

19   on -- I believe that it could be a breach of the plea agreement

20   itself, and so we would like the Court to make a determination

21   of whether or not by probable -- by a preponderance of the

22   evidence if it is, in fact, a breach of the plea agreement.

23          **THE COURT:**  You don't want to comment on what the

24   remedy would be if I so find?

25         **MR. MORGAN:**  Your Honor, if the remedy would be a

1 breach that the government and the Court would no longer be

2 bound by the C plea, but the defendant himself still would be

3 bound by the C plea.

4          **THE COURT:**  All right.  Mr. McKee?

5          **MR. MCKEE:**  Thank you, Your Honor.

6      Your Honor, I think this is an unfortunate

7 misunderstanding.  Mr. Paul clearly has had significant drug

8 use issues in the past.  He was in drug treatment as early as

9 2012.  He made specific statements as to the length and

10 frequency of his drug use during the presentence

11 recommendation.

12      The issue in this conversation with Ms. Hayfron-Benjamin

13 was that at the time of this conversation, Mr. Paul had been in

14 treatment throughout the period of his pretrial, successfully,

15 for a year, had been testing negative the entire time.  And at

16 this time, he did not believe that he had a drug problem.

17 That's not at all inconsistent with what he has said in the

18 past.

19      And at no point -- and I verified this with

20 Ms. Hayfron-Benjamin, at no point during this conversation with

21 Ms. Hayfron-Benjamin did Mr. Paul say "I didn't use drugs in

22 the past."  That is not what he said.  He did not make any

23 misstatements or misrepresentations either to the presentence

24 report or to Ms. Hayfron-Benjamin.

25      And, Your Honor, the characterization of the charade was

1    not Mr. Paul's word.  That was the characterization of

2    Ms. Hayfron-Benjamin.

3         **THE COURT:**  Perhaps you'll call her and hear her view

4    of the facts.

5         I don't know whether your client is going to want to

6    testify, but I would have him testify under oath.  And there is

7    an issue of potential perjury, so you need to advise him.

8         We're not going to decide this on counsel's

9    representation.  There is a report, a credible report from our

10   probation officer that he lied to -- in general, and that

11   itself is a concern.  Whether or not he had a drug problem, he

12   lied about it.

13        Let's hear what she has to say.  I'll let you inquire.

14   But for now, you may proceed.

15        **MR. MCKEE:**  May I, Your Honor?

16        The issue, I think, at this point, as a threshold matter,

17   is that we've received notice of this effectively this morning.

18   We are not -- we have not had an opportunity to ask for

19   Ms. Hayfron-Benjamin's notes.  We don't have any materials

20   related to this alleged violation.

21        The remedy that the government is asking for is extremely

22   serious compared to what the allegation is.  They are asking to

23   completely be excused from their agreement.  And so we think we

24   have a right to an adequate hearing with adequate time to

25   prepare.

 1              **THE COURT:**  All right.  Well, that may well be.  But

 2   we're going to take her testimony now and hear what she says.

 3        You've made a representation:  Misunderstanding; he never

 4   said it; he had a problem.  That's not what the report is from

 5   the U.S. attorney.

 6        Why don't you have a seat now.  Let's hear from

 7   Ms. Hayfron-Benjamin.

 8        You want to stand?  I don't know that you need to be

 9   sworn, but you're an officer of the court.

10                    **CHRISTINE HAYFRON-BENJAMIN,**

11   an officer of the court, was examined and testified as follows:

12                            **EXAMINATION**

13   BY THE COURT:

14   **Q.**   So tell us what your situation is here.  What have you

15   determined with regard to what Mr. Paul has said or done?

16   **A.**   Thank you, Your Honor.

17        So the program, he was attending treatment at KP

18   Counseling Services.  The program advised me on October 24th,

19   and I saw this message on November 2nd, that he stopped

20   attending treatment --

21   **Q.**   At first he stopped attending?

22   **A.**   Yes, he stopped attending.

23   **Q.**   All right.  And when was that?

24   **A.**   So the program, in their report, say that he wasn't

25   attending in that month, the month of October.

1       When I went back and took a look at it, he -- and they

2   also clarified that he stopped attending in August, at the end

3   of August.

4   **Q.**   So August, September, October, November -- November?

5   **A.**   So September and October, he wasn't attending.  He last

6   attended on August 23rd.  Let me just doublecheck.

7   **Q.**   With what frequency was he to attend?

8   **A.**   So he was attending -- one second.  Let me review the

9   notes here.

10      So he was attending one hour a month.  So in August, he

11  attended one hour.

12  **Q.**   That was the directed time he was to attend, one hour per

13  month?

14  **A.**   Yes.  Actually, no, he was attending twice per month.  In

15  August, he attended just once.  So he was attending twice.

16  **Q.**   Two times per month?

17  **A.**   Yes.

18  **Q.**   For an hour?

19  **A.**   Yes.

20  **Q.**   All right.  And where was he attending?

21  **A.**   KP Counseling.

22  **Q.**   Where?

23  **A.**   KP Counseling Services.

24  **Q.**   Where is that?

25  **A.**   That is in Green -- I mean Glen Burnie.

1  **Q.**   All right.  Where does he reside?

2  **A.**   He resides in Laurel.

3  **Q.**   In Laurel.

4       Did he ever contact you and say, "I'm not attending

5  anymore?"

6  **A.**   No, he did not.

7  **Q.**   All right.  So you then called him on that?

8  **A.**   So I called him.  He --

9  **Q.**   When did you talk to him?

10 **A.**   I spoke to him on November 2nd.

11 **Q.**   On when?

12 **A.**   November 2nd.

13 **Q.**   November -- first time?

14 **A.**   About this issue, yes.

15 **Q.**   All right.  And what did you say to him?

16 **A.**   So I called him and told him that KP reached out to me,

17 and they informed me that he had stopped attending.  And I

18 asked him why.  And that's when he gave multiple reasons --

19 **Q.**   I want you to be explicit as to what he said.

20 **A.**   Okay.  So the first thing he stated was there were

21 transportation issues.  He stated that he was -- he stated that

22 he wanted other family members to have access to the vehicles.

23 That was one reason he gave.

24      Then he stated that he felt that it was a waste -- it was

25 wasteful for him to drive 30 minutes to a treatment program

1  that was only one hour, so he thought that that was wasteful.

2      And then he stated that this isn't a drug case, and he --

3  so he said this isn't a drug case.

4      And then he stated that he did not have a drug problem.

5      So then I stated -- then, I referred to the assessment

6  that he had.  And the assessment that he had last year, he

7  informed the program that he -- he informed the program during

8  the assessment that he wasn't currently using, but he had used

9  in -- in the past.  And he had mentioned past drug use, but he

10 noted in that assessment that he wasn't currently using.

11     So I asked him about, you know, the drug -- the drug use,

12 and he stated that he -- he remarked that he mentioned drug use

13 because other people had told him that if you mention that you

14 have a drug problem, you will get a more lenient sentence.  He

15 had stated that "I was just saying" -- "I was just saying it to

16 see if it would help in reducing the time."

17     And then he stated --

18 **Q.**   Let me be clear.  He told you this?

19 **A.**   Yes, he told me.

20 **Q.**   That somebody told him he would get a lesser sentence if

21 he said he had a drug problem?

22 **A.**   Right, because you -- yeah.  So that's what he stated,

23 that he was told that you get less time if -- so he said "I was

24 just saying it to see if it would help in reducing the time."

25 So -- so he said that, and then so treatment was recommended.

1    And then so, although his counsel stated that, "Well, he

2  never explicitly stated that he never used drugs," that was

3  implied, because he stated, even at the time of the assessment,

4  that he wasn't currently using; he didn't currently have a drug

5  problem.  That was never in doubt.

6    So what the question was, well, then, why did you mention

7  drug use?

8    And that's when he remarked that he stated that he had

9  used drugs in the past because of what others had told him

10  about it helps in getting a more lenient sentence.

11    And then he stated that when he -- the last time he had a

12  hearing, I think he filed a motion to get -- to be granted

13  permission to go out to work, and that didn't go in his favor.

14  And he stated that that taught him that the Court doesn't care,

15  so he just didn't see the point.  It wasn't going to help

16  him -- you know, claiming a drug problem, past drug use wasn't

17  going to help him in getting a lenient sentence, so what was

18  the point?  So he just stopped attending.

19    So that was the conversation.

20  **Q.**  He told you he determined that it was not going to help

21  him to say that he had a drug problem?

22  **A.**  Right.

23  **Q.**  I thought you said earlier he was told that it would help

24  him.

25  **A.**  It would help him.  But then he stated that since things

1   weren't -- after that hearing didn't go his way, he -- he

2   concluded that the Court doesn't care, that was his -- that was

3   the words he said, "The Court doesn't care."

4   **Q.**   The Court doesn't care about his drug problem?

5   **A.**   Yeah, the Court doesn't care.  And then he just felt that

6   there was no point in continuing to attend the treatment.

7       And then he repeated again, that -- "And, plus, this isn't

8   a drug case anyway."  And he again stated, which he's always

9   stated, that he doesn't currently have a drug problem.

10      And so -- and that was consistent with the testing.  He's

11  maintained negative drug test results, so the decision was made

12  that I would just discharge him from --

13  **Q.**   That he was not currently having a drug problem?

14  **A.**   Uh-huh.

15  **Q.**   Testing will show -- was he going to testing?

16  **A.**   Yeah.

17  **Q.**   And it was showing negative?

18  **A.**   Negative, consistently.

19          **THE COURT:**  All right.  Mr. Morgan, you want to

20  inquire?

21                     **CROSS-EXAMINATION**

22  **BY MR. MORGAN:**

23  **Q.**   The -- the intake at the treatment facility, can you

24  please say -- tell me again what it was that he said he told

25  that treatment provider?  Or do you have any record of that?

1  **A.**  Right, I -- yeah.  So he stated -- this is an exact quote

2  from the assessment, "Mr. Paul reported" --

3          **MR. MCKEE:**  Your Honor, I'm sorry, we would object.

4  If this is a statement from the provider, these are protected

5  by privilege, and we're not waiving that privilege.

6          **THE COURT:**  No privilege when it comes to law

7  enforcement.  Your office needs to learn that.  I've had that

8  argument made before.  I suggest you look at the statute when

9  it comes to privacy.  Law enforcement is not covered by it;

10 otherwise, you could have defendants say we're not going to

11 release information; and you can, though.

12         That's my ruling.  Check it out.

13         Go ahead.

14         **MS. HAYFRON-BENJAMIN:**  Okay.  So Mr. Paul reported

15 his history of substance abuse began with marijuana at onset

16 age 17, smoking, and reported he stopped using on August 11th,

17 2022; he reported first using alcohol at age 17, but only uses

18 this on rare occasions; he reported use of codeine, onset age

19 25, that was oral, but denied having an issue currently; he

20 reported using codeine at 25 after being prescribed it for pain

21 from being shot, and a bad cough; he reported using codeine

22 until age 29, and reports last use was November 22nd, 2021.

23         He reported attending drug treatment for marijuana

24 voluntarily because of a distribution charge.  Client reports

25 he completed treatment in Rockville, but we could not verify

1   this.

2   **BY MR. MORGAN:**

3   **Q.**   All right.  And as to his current use, was there a

4   statement as to his current use?

5   **A.**   Yeah, he stated he denied having an issue currently.  So

6   all of the drugs, there was -- he denied having an issue

7   currently.  It was only reports of past use.  It was the

8   marijuana and then the codeine.

9            **MR. MORGAN:**  Okay.  The Court's brief indulgence.

10  **BY MR. MORGAN:**

11  **Q.**   You wrote in here that he, therefore, did not see the

12  point of continuing the charade.  And I think that you

13  mentioned that that wasn't a direct word that he used, but that

14  was what you gleaned from the conversation, was the point of it

15  all.

16       What did you mean by that?

17           **THE COURT:**  When did you -- in what context did the

18  word "charade" come up?  I guess that's the first thing.

19           **MS. HAYFRON-BENJAMIN:**  Right.  So in order to do

20  something positive to put on to get a favorable outcome, so the

21  intended --

22           **THE COURT:**  Did you use the word to the defendant?

23  Did you say, "This is a charade"?

24           **MS. HAYFRON-BENJAMIN:**  No, I'm the one that -- that

25  was my interpretation of what he described.

1     **THE COURT:**  Did you say that to him, or that's what
2   you told --
3     **MS. HAYFRON-BENJAMIN:**  No, that's what I put in the
4   report.
5     **THE COURT:**  That's what you put in your report?
6     **MS. HAYFRON-BENJAMIN:**  Yeah.
7     **THE COURT:**  Okay.
8   **BY MR. MORGAN:**
9   **Q.**   Okay.  And so the charade, you're saying, would be the --
10  making it appear as if he had a drug problem even though he
11  didn't?
12  **A.**   Yes, and the going to the treatment and addressing the --
13  the nonexistent drug problem in an effort to get a favorable
14  outcome in court.
15  **Q.**   Okay.  All right.
16    **MR. MORGAN:**  Nothing else.  Thank you.
17    **THE COURT:**  All right.  Mr. McKee, let me just stop
18  you for a second.  This doesn't have to be the final matter
19  because you've said you had just gotten notice of this, and I
20  think the letter I have is dated November 6th, which is
21  yesterday, so it came in yesterday.  And, presumably, this is
22  your first notice, you say, of this, so I don't want to bind
23  you to her testimony.
24      You need to hear what she says, though, because you need
25  to hear what the issue is.

1    You can defer your cross-examination.  We'll continue the

2    sentencing to allow for this to be pursued, and for you to talk

3    to your client and figure out what you want to do.

4        Now, here's the issue.  I've heard you say this, you want

5    to subpoena all her notes and so on and so forth.  I don't know

6    whether that's permitted, but the government may have a

7    position about that.

8        I don't ordinarily get in a situation where a criminal

9    defendant says "I want to subpoena all the probation's notes to

10   see whether they are telling the truth."  The government may

11   resist that request.  In fact, if you intend to -- if you're

12   going to ask her to subpoena her notes, you do it by formal

13   written motion, and you respond, Mr. Morgan, that you think

14   that it should or should not be done.

15       I will give you the opportunity to examine her.  She's an

16   officer of the court, so it's not a matter of being concerned

17   about whether she's -- and so on.  There's hearsay issues.  You

18   certainly can check out the so-called privacy rights of

19   somebody who is under examination by law enforcement, but I've

20   rejected that argument already once before that your office

21   raised.

22       So that's what we'll do.

23       But what I would say is, I'm prepared to continue the

24   sentencing with this in mind.  This is a very serious issue, as

25   far as I'm concerned.  You may or may not know, I have a

1  certain resistance to (c)(3) pleas in general.  But beyond

2  that, someone who lies, in fact, if he did, someone who makes

3  it up to get a lenient sentence, someone who stops attending

4  treatment, these are all very serious issues.

5      Mr. Paul, and this is to you, you don't need to respond.

6  You're in the criminal justice system.  Sad to say at this

7  point, you're not your own man; you don't make the decisions,

8  the Court does, in the end, based on presentations by the

9  government and representations by your counsel.  You need to

10 keep that very clearly in your mind because it's going to have

11 an impact on the way the Court handles this case.

12     So unless you want to ask anything now, and I wouldn't

13 bind you or limit you by what you inquire, Mr. McKee, I'll pass

14 this and we'll reset it for hearing.  You tell me what you want

15 to do.

16     **MR. MCKEE:**  Your Honor, I would defer my

17 cross-examination to the next hearing.

18     **THE COURT:**  All right.  Fair enough.

19     Anything more that you want to do now, Mr. Morgan?

20     **MR. MORGAN:**  Your Honor, may I have one brief moment,

21 please?

22     No, Your Honor, thank you.

23     **THE COURT:**  All right.  The other thing I would say

24 to you, Mr. McKee, is if you're proposing to call the defendant

25 at a subsequent future hearing, I expect him to be sworn.  And

1  there are issues of potential perjury that you need to talk to

2  him about, and consider yourself, in connection with this.  So

3  that's another -- I would say factor in the mix that you need

4  to think about.

5          **MR. MCKEE:**  Certainly, Your Honor.

6          **THE COURT:**  All right.  I don't know -- could we

7  check with chambers and see what a date is?  Call in and see

8  with Jesse whether we've got some time.

9          How much time you want, Mr. -- I may, frankly, be sort of

10  tied up in the next several weeks, I have to tell you this,

11  with other hearings.  But let's see what Jesse has.  And then

12  maybe after the first of the year, frankly.

13          All right.  Let me see.  Let me see what we've got --

14          **MR. MCKEE:**  Certainly, Your Honor.

15          **THE COURT:**  -- in terms of dates.

16          I might say as well, Mr. McKee, he's still under these

17  conditions as far as probation.  I suggest he may want to begin

18  to comply.  If he doesn't, that's another factor the Court will

19  consider.

20          **MR. MCKEE:**  That point is well taken, Your Honor.

21          **THE COURT:**  I think there's no problem with a speedy

22  trial.  The Court has to inquire into an issue of whether the

23  defendant has breached and so on.

24          What's the problem?  Can you not get a date?

25  (Deputy clerk speaking to the judge.)

1          **THE COURT:**  Well, in January.  I'm saying, the first

2   week in January, see what she's got.

3          **DEPUTY CLERK:**  Okay.  Okay.  She said the first is

4   January 3rd at 11:00.

5          **THE COURT:**  All right.  Wednesday, January 3,

6   11:00 a.m.  Is that doable?

7          **MR. MORGAN:**  Yes, Your Honor.  Thank you.

8          **MR. MCKEE:**  Your Honor, I am on-duty that day -- I'm

9   on-duty that day, Your Honor, so I can schedule it, but with

10  the caveat that there may be conflict.

11         **THE COURT:**  Well, all right.  11:00 a.m.  That's what

12  we're talking about.

13     Is it later that day as well?  What about the 4th as well?

14  What date -- what's that?

15         **LAW CLERK:**  We have two hearings.

16         **THE COURT:**  Two hearings on the 4th.  We'll keep it

17  on the 3rd at 11:00 a.m.

18         **MR. MCKEE:**  I'm sorry, Your Honor, I was looking at

19  the wrong calendar.  I have a different conflict.  I have a

20  court -- I have a hearing at 10:00.  Could we do it in the

21  afternoon on the 3rd?

22         **THE COURT:**  Afternoon?

23         **DEPUTY CLERK:**  Can we do it in the afternoon for the

24  3rd?

25         **THE COURT:**  2:00 p.m.

 1          **DEPUTY CLERK:**  So on the 3rd, you have a suppression

 2  hearing, she says, at 4:00.

 3          **THE COURT:**  At 4:00?  We'll set this for 2:00 --

 4  wait, a suppression hearing at 4:00?  That's not right.

 5          **DEPUTY CLERK:**  Your suppression hearing is at 2:00.

 6          **THE COURT:**  2:00.  That's what I thought.

 7          **DEPUTY CLERK:**  She was saying perhaps 4:00 for this

 8  hearing.

 9          **THE COURT:**  What -- when does -- when does your trial

10  start?

11          **LAW CLERK:**  The 8th.

12          **THE COURT:**  The 8th?  What's the 5th?  What do you

13  have on the 5th?  Is that a weekend?  I need a calendar here.

14          **DEPUTY CLERK:**  Anything for the 5th?

15      Your Honor, you're free on the 5th.  That's a Friday.

16          **THE COURT:**  Hm.  I don't suppose anybody wants to

17  come in after the Christmas holiday week?  I got some time

18  then.

19          **MR. MCKEE:**  I'll be away that week.

20          **THE COURT:**  That's what I was concerned about.  Yeah.

21      I have a January calendar.  Let me see.  You -- I can't

22  remember, trial starts on the 9th?  The 8th?

23      What about the 9th or 10th in the morning, just before the

24  jury -- I know I'm in a trial, but we can do it maybe before

25  that.  At maybe 10:00 a.m.?

1          **DEPUTY CLERK:**  At 10:00 a.m.?

2          **THE COURT:**  January 9th or 10th.

3          **MR. MCKEE:**  Those work for me, Your Honor.

4          **MR. MORGAN:**  Which date?  I'm sorry, Your Honor?

5          **DEPUTY CLERK:**  Either date is fine.

6          **THE COURT:**  January 9th or 10th?  All right.

7     January 9th is a -- is a Tuesday.

8          **MR. MORGAN:**  The Court's brief indulgence.

9          **THE COURT:**  Make it the 10th, because we're going to

10    be in the beginning of the trial.  Make it the 10th at

11    10:00 a.m.

12         **MR. MORGAN:**  That's fine, Your Honor.  Thank you.

13         **MR. MCKEE:**  That works for us.  Thank you, Your

14    Honor.

15         **THE COURT:**  Have discussions, of course, in the

16    meantime.

17       All right.  Is there anything else?

18         **MR. MORGAN:**  Nothing from the government.  Thank you.

19         **MR. MCKEE:**  No, Your Honor.

20         **THE COURT:**  Again, the defendant continues on his

21    conditions of release.  All right, we'll see you back here on

22    January 10th.

23         **MR. MCKEE:**  Thank you very much, Your Honor.

24         **LAW CLERK:**  All rise.

25         **DEPUTY CLERK:**  This Honorable Court stands in recess.

1            **THE COURT:**  All right.  We're in recess, folks.

2  (Recess at 11:46 a.m.)

```
1                      CERTIFICATE OF OFFICIAL REPORTER

2

3

4        I, Paula J. Leeper, Federal Official Court Reporter, in

5   and for the United States District Court for the District of

6   Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that

7   the foregoing is a true and correct transcript of the

8   stenographically-reported proceedings held in the

9   above-entitled matter and the transcript page format is in

10  conformance with the regulations of the Judicial Conference of

11  the United States.

12
                              Dated this 21st day of November 2023.
13

14

15                            /s/ Paula Leeper
                              _____
16                            Paula J. Leeper
                              Federal Official Reporter
17

18

19

20

21

22

23

24

25
```